Estate of Lottie Hamar, Deceased, Myron Hamar, Executor v. Commissioner.
Estate of Hamar v. Commissioner
Docket No. 69575.
United States Tax Court
T.C. Memo 1960-107; 1960 Tax Ct. Memo LEXIS 183; 19 T.C.M. (CCH) 575; T.C.M. (RIA) 60107; May 27, 1960
Richard Katcher, Esq., B. F. Keith Building, Cleveland, Ohio, and Sheldon J. Gitelman, Esq., for the petitioner. Maurice B. Townsend, Esq., for the respondent. RAUM
*183 Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $27,314.42 in estate tax and an addition to tax in the amount of $13,657.21 [1] under Sections 894(a) and 3612(d)(2), Internal Revenue Code of 1939. The issues are: 1. Whether a gift of $20,000 made by the decedent to her son, Myron Hamar, on January 12, 1953, within *184 three years prior to her death, was made in contemplation of death within the meaning of Section 811(c)(1)(A), Internal Revenue Code of 1939. 2. Whether Myron Hamar, executor of the will of Lottie Hamar, filed a false or fraudulent estate tax return for her estate. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by reference. Lottie Hamar died testate on April 15, 1953, at the age of 60, while residing in Cleveland, Ohio. Her husband, Nathan Hamar, died on April 26, 1950. Her son and only child, Myron Hamar, presently residing in Scarsdale, New York, is the duly appointed and acting executor of her will. At the time of her death he was 30 years old and resided in Shaker Heights, Ohio. He filed an estate tax return for her estate with the district director of internal revenue at Cleveland, Ohio, on July 15, 1954. Early in March of 1952 the decedent, Lottie Hamar, went to the Mt. Sinai Hospital in Cleveland where a biopsy was taken of a lump on her neck which she had had for many years. She was in the hospital for approximately two hours. The diagnosis was giant follicular lymphoblastoma, which is a malignancy of the lymph *185 glands, and she was given X-ray treatments. In October or November 1952 she went to Martinsville, Indiana, for a physical checkup. She developed pain in her abdomen and glands in her neck, loss of weight, and increasing size of her abdomen. She was again admitted to Mt. Sinai Hospital on or about March 1, 1953 and was given additional X-ray treatments. After approximately two weeks of those treatments the mass near her abdomen disappeared and she seemed to be improving. The doctor who was attending her at that time felt that she was going to get better temporarily. She then developed a depression of her bone marrow, probably due to the X-ray treatments, and died in the hospital on April 15, 1953. Prior to her death decedent maintained an apartment in Cleveland and was active in handling her investments. In January 1953, decedent's son, Myron Hamar, and his wife purchased a home on Attleboro Road in Cleveland. On January 12, 1953, decedent visited them in their new home and asked them how they were "fixed financially." When her son indicated that they could use some money to furnish their home, decedent asked if $20,000 would help. When her son replied that it would decedent gave *186 him a check for $20,000. Part of the proceeds of this check was used by him and his wife to purchase furnishings for their new home. At the time of this gift, decedent did not say or do anything which indicated to her son that she had a premonition that she would die in the near future. Myron Hamar first became aware of the seriousness of his mother's condition about March 15, 1953, when her doctor informed him that he did not like the way things were going and suggested that a specialist be employed. At that time, decedent asked Philip Lustig, who had been the attorney for her and her deceased husband for many years, to prepare a will. Myron Hamar was present with his mother and Lustig when the will was discussed and knew he was to be the principal beneficiary. The will was drawn about the middle of March and Lustig advised Myron Hamar of its contents. When decedent called her son and Lustig to the hospital for the drawing of her will, she asked her son to go to her apartment and get her bank books from the table in which they were kept and bring them to the hospital. He complied with her request. At that time she had a checking account and a savings account with the Cleveland *187 Trust Company, a savings account with the Society for Savings in Cleveland, and a savings account with the National City Bank of Cleveland. All of these accounts were in her name only. Myron Hamar was advised by Lustig to go to these banks and have the money in each of his mother's accounts transferred into a joint account with his mother, and then into an account in his name only. On March 31, 1953, the balance in the amount of $2,808.71, in decedent's National City Bank of Cleveland savings account No. X6918, was transferred into a joint savings account with Myron Hamar in the same bank. On April 3, 1953, the balance of $2,808.71 in this joint savings account was transferred to a savings account No. XX3136 in the name of Myron Hamar only, such account also being with the National City Bank of Cleveland. On April 1, 1953, a deposit in the amount of $3,443 was made to the Cleveland Trust Company checking account in the name of Myron Hamar. The source of the funds for this deposit was dividend checks on securities in the name of decedent. On April 2, 1953, the amount of $820.68 was transferred from decedent's Cleveland Trust Company checking account to a checking account with *188 the same bank in the name of Myron Hamar only. On April 10, 1953, the balance in decedent's savings account No. X-XX8076 with the Society for Savings in Cleveland was in the amount of $64,692.03. On that date this account was changed to a joint account with Myron Hamar in the same bank. On April 13, 1953, this joint savings account was closed and $59,692.03 was transferred to a savings account, No. X-XX3955, with the Society for Savings in the name of Myron Hamar only. The remainder of the proceeds of the joint savings account in the amount of $5,000 was, at the same time, transferred to a checking account in the name of Myron Hamar only. Lustig accompanied Myron Hamar to the Society for Savings and the National City Bank of Cleveland and was with him when the transfers were made in those banks. Lustig advised that all of the foregoing transfers, including the April 1, 1953 deposit, be made, and Hamar followed his advice in making them. On April 3, 1953, decedent executed her last will and testament in which Myron Hamar was named as the executor and principal beneficiary. The will was drawn by Lustig. After decedent's death on April 15, 1953, Lustig was employed by Myron Hamar *189 to act as attorney for the estate of decedent. Lustig prepared the "Application with itemized statement for determination of Inheritance Tax" (hereinafter sometimes referred to as the Ohio inheritance tax return) which Myron Hamar, as executor of decedent's will, was required to file for the determination of the Ohio inheritance tax. He received from Myron Hamar the information as to assets and liabilities of decedent which he included in the Ohio inheritance tax return. He did not ask Hamar to give him the bank books or records of decedent's bank accounts and Hamar never gave any of them to him. In Schedule D of the Ohio inheritance tax return it was reported that there was no joint or survivorship property standing in the name of decedent; that there were no "transfers of property made by the decedent within two years prior to death * * * which are admitted to have been made in contemplation of death * * *"; and that there were no "transfers of property made by the decedent within two years prior to death without a valuable consideration substantially equivalent in money or moneys worth to the full value of such property which are not admitted to have been made in contemplation of *190 death or intended to take effect in possession or enjoyment at or after death". The application was signed and sworn to by Myron Hamar on June 15, 1953. After the Ohio inheritance tax return had been prepared, Myron Hamar employed A. P. Annan, an attorney, to prepare the Federal estate tax return which he was required to file for the estate of decedent. Annan asked Hamar where he could obtain the information to be reported in the return. Hamar referred him to Lustig and told him that Lustig had complete information as to the affairs of the estate and had prepared the Ohio inheritance tax return. Annan talked with Lustig and received from him a copy of the Ohio inheritance tax return. Annan prepared the estate tax return from the information contained in the Ohio inheritance tax return. At the time he prepared this return he did not know about the bank accounts decedent had prior to her death and was not told about the transfers of funds in those accounts to Hamar. In Schedule G of the estate tax return it was reported that the decedent did not after September 8, 1916, make any transfer in contemplation of death; that decedent, within two years immediately preceding her death, did *191 not make any transfer of a material part of her property without an adequate and full consideration in money or money's worth; and that the decedent did not, at any time, make a transfer of an amount of $5,000 or more without an adequate and full consideration in money or money's worth, but not believed to be includible in her gross estate. Myron Hamar signed the "Declaration of Person or Persons Filing Return" on Sheet XXI of the return which read, in part, as follows: "We/I, Myron Hamar * * * declare under the penalties of perjury that we/I have carefully examined this return (including the additional sheets inserted, if any); that to the best of our/my knowledge, information, and belief, herein is listed all of the property constituting the decedent's gross estate, as defined by the statute * * *; that we/I have no knowledge of any transfers made * * * by the decedent during his lifetime of the value of $5,000 or more, other than bona fide sales for an adequate and full consideration in money or money's worth, except as stated in Schedule G * * *." Annan signed the declaration required of the attorney who prepared the return. Myron Hamar, the executor of the will of Lottie *192 Hamar, knowingly and willfully filed a false and fraudulent Federal estate tax return for the estate of Lottie Hamar with intent to evade estate taxes. Opinion RAUM, Judge: 1. Petitioner contends that the gift of $20,000, made by decedent to her son, Myron Hamar, on January 12, 1953, was not a transfer in contemplation of death which would require the inclusion of the amount of the gift in decedent's gross estate under the provisions of Section 811(c)(1)(A), Internal Revenue Code of 1939. [2] It urges that the dominant motive of decedent in making the gift was associated with life, rather than with death, and therefore the gift does not fall within the statute. The motive relied upon was the desire of decedent to give her son financial assistance in furnishing his new home and, according to petitioner, in making this gift she was following a pattern established in previous years of making substantial gifts to her son. *193 The testimony of Myron Hamar as to gifts received by him from decedent prior to January 1953, is as follows: "Q. I direct your attention to the period prior to January 1, 1953, and I would like to know whether or not, did your mother ever give you any substantial gifts? By that I mean gifts in excess of $1,000. "A. Yes, many times. "Q. And would you tell us when, if you remember, and under what circumstances and the amounts, if you recall? "A. I cannot recall specific amounts. She helped us on many occasions. "Q. Well, can you limit your recollection, if you cannot recall specific amounts, to gifts in excess of $1,000? "A. Yes; she helped us, for example, when we purchased a home when we lived in Los Angeles. My business was in Los Angeles, and we bought a home there, and my mother and dad helped us. "Q. When was that, if you recall? "A. That was approximately July of 1948. "The Court: Who are 'we'? "The Witness: My wife and myself, I refer to as 'we'. "Q. Were there any other similar gifts? "A. Yes; she had given us gifts from time to time. I cannot recollect any in particular, but from time to time she had given us gifts. * * *
"Q. Going back, you *194 referred to a gift for a home. Do you recall how much that gift was? "A. Approximately $5,000." This testimony does not convince us that decedent was following any pattern of making substantial gifts to her son when she gave him $20,000 on January 12, 1953. Although Myron Hamar testified that his mother had made many gifts in excess of $1,000, the only substantial gift he could recall having received prior to that date was one of $5,000 made in 1948, during the lifetime of his father who died in 1950. Petitioner had the burden of proving that the $20,000 gift was not made by the decedent in contemplation of death. This gift was made approximately three months prior to her death, and approximately ten months after a biopsy disclosed that she had a malignancy of the lymph glands on her neck. During that ten month period she received X-ray treatments. Nowhere in the record is there any convincing evidence which would permit us to find that on January 12, 1953, she was unaware of the serious implications of those treatments, and that she was not motivated by the thought of death when she made this unusual gift on that date. The doctor who made the original diagnosis and treated her, *195 and who knew of her condition at the time of the gift, whether she had been informed of the nature of her illness, and whether she had been given any assurance that she need have no concern over the state of her health, was not called as a witness. Petitioner's unexplained failure to produce him as a witness strongly suggests that his testimony would have been unfavorable. Wichita Terminal Elevator Co., 6 T.C. 1158, 1165, affirmed, 162 F. 2d 513 (C.A. 10). The doctor who attended decedent subsequent to March 1953, and her son, both of whom testified, were unable to state whether she had, in fact, been advised as to the results of the biopsy in 1952. Her son did testify that at the time of the gift she did not say or do anything which indicated that she had a premonition that she would die in the near future. But the fact that she may not have had such a premonition does not preclude the taxation of the gift, if the though of death was the impelling cause of the transfer. The Supreme Court in United States v. Wells, 283 U.S. 102, 117-118, said: "As the test, despite varying circumstances, is always to be found in motive, it cannot be said that *196 the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. * * * The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand'." The proof submitted by petitioner establishes only that decedent, who had received X-ray treatments for a malignancy of her lymph glands, went to the home of her son and only child three months prior to her death, armed with her check book; asked her son and his wife how they were "fixed financially", and, when they indicated they could use some money to furnish their new home, gave her son a check *197 for $20,000. On the basis of this evidence, and in the absence of any convincing evidence that in making this substantial gift she was carrying out a policy of making liberal gifts to her son during her lifetime, or had some other motive associated with life rather than death, we cannot find that petitioner has sustained its burden of proving that the respondent erred in his determination that the gift was in contemplation of death. This issue is, therefore, decided in favor of the respondent. 2. The remaining question is whether Myron Hamar, as executor of the will of decedent, filed a false or fraudulent estate tax return for her estate which rendered it liable for the 50 per cent addition to tax for fraud provided for in Sections 894(a) and 3612(d)(2) of the Internal Revenue Code of 1939. The evidence with respect to the foregoing $20,000 gift is, of course, not sufficiently strong to satisfy respondent's burden of proof in respect of fraud. However, we are of the opinion that the various transfers from decedent to Myron Hamar during the period March 31-April 13, 1953, followed by the omission of such transfers from the estate tax return amply support the Commissioner's determination *198 of fraud. Petitioner concedes that these transfers were made in contemplation of death and should have been included in the decedent's gross estate. We reach our conclusion as to fraud with some reluctance because Myron Hamar as a witness was fair and candid and because the guiding spirit behind these transfers was the attorney who had counseled the devious steps that were taken in respect of the bank accounts. Nevertheless, we are satisfied on the evidence that Hamar knew what he was doing, and that he knowingly and willfully filed a false and fraudulent estate tax return. We have made a finding to that effect. Decision will be entered under Rule 50. Footnotes
1. By amended answer the Commissioner alleged that the addition should be redetermined to be in the amount of $29,432.20. The petitioner does not contest the redetermination if the Commissioner should otherwise prevail on the issues presented for decision.↩
2. Section 811(1), Internal Revenue Code of 1939 (applicable to estates of decedents dying after September 23, 1950) reads as follows: Contemplation of Death. - If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d), and (f); but no such transfer, relinquishment, exercise, or release made prior to such three-year period shall be deemed or held to have been made in contemplation of death.↩